**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| MAINSTREAM FASHIONS FRANCHISING, INC., | ) CASE NO. 19-CV-02953 SRN/TNL ) ) |
| Plaintiff and Counterclaim Defendant, | ) ) **PLAINTIFF'S REPLY TO** ) **DEFENDANTS' COUNTERCLAIM** |
| vs. | ) ) |
| ALL THESE THINGS, LLC, *et al.*, | ) ) |
| Defendants and Counterclaim Plaintiffs. | |

_____

Plaintiff Mainstream Fashions Franchising, Inc. ("Mainstream") denies each and every allegation in the Counterclaim brought by Defendants All These Things, LLC, Charlotte Parris, Anitra Mitchell, Bradley Mitchell (collectively "the Mitchell Parties"), Grace and Love, LLC, and CCP, LLC (collectively the Mitchell Parties, Grace and Love, LLC and CCP, LLC are referred to as "Counterclaim Plaintiffs") except as expressly admitted or qualified below. Mainstream further states and alleges as follows:

### I.  Introduction

1. Mainstream admits that the Mitchell Parties used to own and operate two Mainstream Boutique franchises, one in Winston-Salem, North Carolina, since 2011, the other in Mooresville, North Carolina, since 2015, and that those franchises were the first brick and mortar Mainstream Boutiques in North Carolina. Mainstream denies the remaining allegations in paragraph 1.

2. Mainstream admits the allegations in paragraph 2.

3. Mainstream admits the allegations in paragraph 3.

4. Mainstream has insufficient knowledge to admit or deny the allegations in the first and third sentence of paragraph 4 and, therefore, denies the same. Mainstream denies that it was aware, and orally approved, of the intended ownership transfer.

5. Mainstream denies the insinuation in footnote 2 of paragraph 5 that the Minnesota Addendum is part of the Franchise Agreements. Mainstream admits the remaining allegations in paragraph 5.

6. As to paragraph 6, Mainstream admits that, in accordance with the terms of the Franchise Agreements, it informed all of its franchisees, including the Mitchell Parties, that they would have to migrate to a new POS System, and that a failure to do so would constitute a default under the Franchise Agreements. Mainstream denies the remaining allegations in paragraph 6.

7. As to paragraph 7, Mainstream admits that the Mitchell Parties stated that they would not install the required POS System. Mainstream denies the remaining allegations in paragraph 7.

8. As to paragraph 8, Mainstream admits that it sent the Mitchell Parties letters dated October 2, 2019 in which it informed them that they were in default of the Franchise Agreements for failing to install the new POS System, and gave them 30 days to cure their default. Mainstream further admits that the Mitchell Parties sent Mainstream a letter on October 3, 2019 in which they informed Mainstream that they intended to terminate the Franchise Agreements effective November 3, 2019. Each of the aforementioned letters speaks for itself, and Mainstream denies any allegations

inconsistent with the terms of the letters. Mainstream admits that the Mitchell Parties shut down their two Mainstream Boutique® franchises as of the close of business on November 1, 2019. Mainstream denies the remaining allegations in paragraph 8.

9. As to paragraph 9, Mainstream admits that shortly after November 1, 2019, Brad Mitchell and Anitra Mitchell formed the entity Grace and Love for the purpose of operating the competing "Love + Well Boutique" at the former Mainstream Winston-Salem location. Mainstream further admits that Charlotte Parris formed the entity CCP for the purpose of operating the competing "Bliss by the Lake" boutique at the former Mainstream Mooresville location, where Brad and Anitra Mitchell had previously owned and operated a Mainstream Boutique®. Mainstream has insufficient knowledge to admit or deny that the Love + Well Boutique began operating on November 11, 2019 and, therefore, denies the same. Mainstream denies the remaining allegations in paragraph 9.

10. Mainstream admits the allegations in footnote 3 of paragraph 10. Mainstream denies the remaining allegations in paragraph 10.

11. Mainstream denies the allegations in the first sentence of paragraph 11. The remaining sentences in paragraph 11 contain a statement of relief sought to which no response is required. To the extent a response is required, Mainstream denies those allegations in paragraph 11.

## II. Parties

12. Mainstream has insufficient knowledge to admit or deny that Anitra Mitchell and Brad Mitchell are the sole members of All These Things and, therefore, denies the same. Mainstream admits the remaining allegations in paragraph 12.

13. Mainstream admits the allegations in paragraph 13.

14. Mainstream admits the allegations in paragraph 14.

15. Mainstream admits the allegations in paragraph 15.

16. Mainstream admits the allegations in paragraph 16.

17. Mainstream admits the allegations in paragraph 17.

18. Mainstream admits the allegations in paragraph 18.

### III. Jurisdiction and Venue

19. Mainstream admits the allegations in paragraph 19.

20. Mainstream admits the allegations in paragraph 20.

### IV. Franchise Regulation

21. Paragraph 21 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream admits that the Federal Trade Commission promulgated regulations collectively known as the FTC Franchise Rule at 16 C.F.R., Part 436 and 437. Mainstream states that the provisions of the FTC Franchise Rule speak for themselves and denies any allegations that are inconsistent with those provisions. Mainstream denies the remaining allegations in paragraph 21.

22. Paragraph 22 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream admits that the FTC amended the FTC Franchise Rule in 2007. Mainstream states that the provisions of the Amended FTC Franchise Rule speak for themselves, and denies any allegations inconsistent with the provisions of the Amended FTC Franchise Rule. Mainstream denies the remaining allegations in paragraph 22.

23. Paragraph 23 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream states that the provisions of 16 C.F.R. § 436.6(b) speak for themselves, and denies any allegations inconsistent with the provisions of 16 C.F.R. § 436.6(b). Mainstream denies the remaining allegations in paragraph 23.

24. Paragraph 24 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream admits that Minnesota has enacted a Franchise Act at Minn. Stat. § 80C.01, *et seq.* Mainstream further states that the provisions of the Minnesota Franchise Act speak for themselves, and denies any allegations inconsistent with the provisions of the Minnesota Franchise Act. Mainstream denies the remaining allegations in paragraph 24.

## V. Factual Background

### A. The Mitchell Parties' Experience Prior to Mainstream

25. Mainstream has insufficient knowledge to admit or deny the allegations in paragraph 25 and, therefore, denies the same.

26. Mainstream has insufficient knowledge to admit or deny the allegations in paragraph 26 and, therefore, denies the same.

### B. The Offer and Sale in Minnesota

27. Paragraph 27 contains a legal conclusion to which no response is required. To the extent a response is required, Mainstream states that it has insufficient knowledge to admit or deny the allegations in paragraph 27 and, therefore, denies the same.

**C. The Parties Enter into the Franchise Agreements.**

28. Mainstream admits the allegations in the first two sentences of paragraph 28. Mainstream has insufficient knowledge to admit or deny the allegations in the third and fourth sentences of paragraph 28 and, therefore, denies the same.

29. Mainstream has insufficient knowledge to admit or deny the allegations in the first and third sentence of paragraph 29 and, therefore, denies the same. Mainstream denies that it was aware, and that it orally approved, of the intended ownership transfer. Mainstream further denies the allegations in footnote 4 of paragraph 29.

30. Mainstream admits the allegations in the first two sentences of paragraph paragraph 30. Mainstream denies the allegations in the third sentence of paragraph 30.

**D. Law Governing the Relationship Between the Parties and Key Terms of the Franchise Agreements as Augmented by the MFA.**

31. Paragraph 31 contains a legal conclusion to which no response is required. To the extent a response is required, Mainstream states that the terms and provisions of the applicable FDDs speak for themselves and denies any allegations inconsistent with those terms and provisions. Mainstream specifically denies that the Minnesota Addenda apply to the Mitchell Parties' Franchise Agreements and denies that the MFA is incorporated into those Franchise Agreements. Mainstream denies the remaining allegations in paragraph 31.

32. Paragraph 32 contains a legal conclusion to which no response is required. To the extend a response is required, Mainstream states that the terms and provisions of

the Franchise Agreements speak for themselves and denies any allegations in consistent with those terms and provisions.

33. As to paragraph 33, Mainstream admits that attorneys from the former Gray Plant Mooty law firm prepared the Franchise Agreements and FDDs that were provided to the Mitchell Parties. Mainstream denies the remaining allegations in paragraph 33 and affirmatively states that the Minnesota Addenda do not apply to, and were not incorporated into, the Mitchell Parties' Franchise Agreements.

34. As to paragraph 34, Mainstream states that the terms and provisions of the Minnesota Addenda speak for themselves, and denies any allegations inconsistent with those terms and provisions. Mainstream denies any allegation that the Minnesota Franchise Act applies to Mainstream's relationship with Counterclaim Plaintiffs and affirmatively states that the Minnesota Addenda do not apply to, and were not incorporated into, the Mitchell Parties' Franchise Agreements. Mainstream denies the remaining allegations in paragraph 34.

35. Mainstream denies the allegations in paragraph 35.

**1.** **Mainstream's Purported Contractual Rights.**

36. As to paragraph 36, Mainstream states that the terms and provisions of Section 15.1 of the Franchise Agreements speak for themselves, and denies any allegations inconsistent with those terms and provisions.

37. As to paragraph 37, Mainstream states that the terms and provisions of Section 15.2 of the Franchise Agreements speak for themselves, and denies any allegations inconsistent with those terms and provisions.

38. Mainstream denies the allegations in paragraph 38.

39. As to paragraph 39, Mainstream states that the terms and provisions of the post-termination covenants not to compete in the Franchise Agreements speak for themselves, and denies any allegations inconsistent with those terms and provisions.

40. As to paragraph 40, Mainstream states that Articles 6 and 17 of the Franchise Agreements contain some, but not all, of the Mitchell Parties' obligations upon termination or expiration. Mainstream further states that the terms and provisions of the Franchise Agreements speak for themselves, and denies any allegations inconsistent with those terms and provisions.

41. Paragraph 41 contains a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 41.

**2.** **The Mitchell Parties' Rights Under the Franchise Agreements**

42. As to paragraph 42, Mainstream states that the terms and provisions of Section 16.1 of the Franchise Agreements speak for themselves, and denies any allegations inconsistent with those terms and provisions.

43. As to paragraph 43, Mainstream states that the terms and provisions of the Franchise Agreements speak for themselves, and denies any allegations inconsistent with those terms and provisions.

**E.** **Historical Relationship Between the Parties**

44. Mainstream denies the allegations in paragraph 44.

45. Mainstream denies the allegations in paragraph 45.

46. Mainstream denies the allegations in paragraph 46.

47. Mainstream denies the allegations in paragraph 47.

48. As to paragraph 48, Mainstream states that the September 27, 2019 letter speaks for itself, and denies any allegations inconsistent with the language of that letter. Mainstream denies the remaining allegations in paragraph 48.

49. Mainstream denies the allegations in paragraph 49.

**F.  New POS System Mandate Leading to Termination**

50. As to paragraph 50, Mainstream admits that on September 19, 2019, it sent the Mitchell Parties two letters (one for each franchise) outlining their obligation to migrate to the new POS System. Mainstream states that the September 19, 2019 letters speak for themselves, and denies any allegations inconsistent with the language of the letters. Mainstream denies the remaining allegations in paragraph 50.

51. As to paragraph 51, Mainstream admits that multiple franchisees voiced concerns about the transition to the new POS system, and further states that such concerns about new technology are normal in any franchise system. Mainstream has insufficient knowledge to admit or deny the allegations in the second sentence of paragraph 51 and, therefore, denies the same. Mainstream denies the remaining allegations in paragraph 51.

52. As to paragraph 52, Mainstream admits that the Mitchell Parties responded to Mainstream's September 19, 2019 letters in a response dated September 27, 2019. Mainstream states that the September 27, 2019 response speaks for itself, denies any allegations inconsistent with the language of the response, and denies that the allegations

in the response are accurate. Mainstream denies the remaining allegations in paragraph 52.

53. As to paragraph 53, Mainstream admits that it sent to the Mitchell Parties two Notices of Default and Termination dated October 2, 2019. Mainstream states that the October 2, 2019 Notices speak for themselves, and denies any allegations inconsistent with the language of the Notices. Mainstream denies the remaining allegations in paragraph 53.

54. As to paragraph 54, Mainstream denies that the October 2, 2019 Notices were sent to the Mitchell Parties via email, and states that the date on which the Mitchell Parties had actual notice/receipt is a legal conclusion to which no response is required. To the extent a response is required, Mainstream has insufficient knowledge to admit or deny the date on which the Mitchell Parties had actual notice/receipt, and therefore denies the same. As to footnote 6 of paragraph 54, Mainstream states that the terms and provisions of the Franchise Agreements speak for themselves and denies any allegations in consistent with those terms and provisions. Mainstream lacks sufficient knowledge to admit or deny the allegations in the second sentence in paragraph 54 and, therefore, denies the same.

55. As to paragraph 55, Mainstream admits that the Mitchell Parties responded to the Notices of Default and Termination on October 3, 2019. Mainstream states that the October 3, 2019 response speaks for itself, denies any allegations inconsistent with the language of the response, and denies that the allegations in the response are accurate. Mainstream denies the remaining allegations in paragraph 55.

56. Mainstream denies the allegations in paragraph 56.

57. As to paragraph 57, Mainstream admits that its counsel sent the Mitchell Parties a letter dated October 16, 2019. Mainstream states that the October 16, 2019 letter speaks for itself, and denies any allegations inconsistent with the language of the letter. Mainstream denies the remaining allegations in paragraph 57.

58. As to paragraph 58, Mainstream admits that the Mitchell Parties sent to Mainstream letters dated November 1, 2019, in which the Mitchell Parties purported to terminate the Franchise Agreements as of November 1, 2019. Mainstream states that the November 1, 2019 letters speaks for themselves, denies any allegations inconsistent with the language of the letters, and denies that the allegations in the letters are accurate. Mainstream admits that the Mitchell Parties shut down their two Mainstream Boutiques on or around November 1, 2019. Mainstream further admits that on or around November 4, 2019, the Mitchell Parties returned a print copy of the operations manual to Mainstream. Mainstream denies the remaining allegations in paragraph 58.

59. As to paragraph 59, Mainstream admits that it sent to the Mitchell Parties two Notices of Termination dated November 5, 2019. Mainstream states that the November 5, 2019 Notices speaks for themselves, and denies any allegations inconsistent with the language of the Notices.

60. As to paragraph 60, Mainstream admits that it sent to the Mitchell Parties two Notices of Audit dated November 6, 2019. Mainstream states that the November 6, 2019 Notices speaks for themselves, and denies any allegations inconsistent with the language of the Notices. Mainstream denies the remaining allegations in paragraph 60.

### G. The Mitchell Parties' Mitigation of Damages

61. As to paragraph 61, Mainstream admits that shortly after November 1, 2019, Brad Mitchell and Anitra Mitchell formed the entity Grace and Love for the purpose of operating the competing "Love + Well Boutique" at the former Mainstream Winston-Salem location. Mainstream further admits that Charlotte Parris formed the entity CCP for the purpose of operating the competing "Bliss by the Lake" boutique at the former Mainstream Mooresville location, where Brad and Anitra Mitchell had previously owned and operated a Mainstream Boutique®. Mainstream has insufficient knowledge to admit or deny that the competing businesses began operating on November 11, 2019 and, therefore, denies the same. Mainstream denies the remaining allegations in paragraph 61.

62. Mainstream has insufficient knowledge to admit or deny the allegations in the first two sentences of paragraph 62 and, therefore, denies the same. Mainstream denies the remaining allegations in paragraph 62.

63. Mainstream denies the allegations in paragraph 63.

### H. Actions After Termination

64. Mainstream has insufficient knowledge to admit or deny the allegations in the first sentence of paragraph 64 and, therefore, denies the same. Mainstream denies the remaining allegations in paragraph 64.

65. As to paragraph 65, Mainstream admits that all Mainstream Boutique® franchise owners are supposed to use Constant Contact to send emails to customers about sales and events, and that a Mainstream employee sent an email to the email list the

Mitchell Parties' maintained in Constant Contact. Mainstream states that the email sent by Mainstream speaks for itself and denies any allegations inconsistent with the email. Mainstream denies that its employee "stole" the customer email list, denies that the email list constitutes the entire customer list, and denies the remaining allegations in paragraph 65.

**I.      The Mitchell Parties' Purported Selling of Mac and Me Products**

66.     Mainstream has insufficient knowledge to admit or deny the allegations in paragraph 66 and, therefore, denies the same.

**J.      Differences between Mainstream and Love + Well and Bliss by the Lake**

67.     Mainstream denies the allegations in paragraph 67.

68.     Mainstream denies the allegations in paragraph 68, including those in subdivisions (a) through (k).

<u>**COUNT I**</u>
<u>**BREACH OF CONTRACT AND**</u>
<u>**THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**</u>
*The Mitchell Parties v. Mainstream*

69.     Mainstream reasserts and incorporates by reference its answers to the preceding paragraphs.

70.     Paragraph 70 contains a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 70. As to footnote 8 of paragraph 70, Mainstream states that the terms and provisions of the Franchise Agreements speak for themselves, and denies any allegations inconsistent with those terms and provisions. Mainstream also denies any allegation that the Minnesota

Franchise Act applies to Mainstream's relationship with Counterclaim Plaintiffs and affirmatively states that the Minnesota Addenda do not apply to, and were not incorporated into, the Mitchell Parties' Franchise Agreements.

71. Mainstream denies the allegations in paragraph 71.

72. Mainstream denies the allegations in paragraph 72.

73. Mainstream denies the allegations in paragraph 73.

74. Mainstream denies the allegations in paragraph 74.

75. Mainstream denies the allegations in paragraph 75.

76. Mainstream denies the allegations in paragraph 76, including those asserted in FN 9.

77. Mainstream denies the allegations in paragraph 77.

78. Mainstream denies the allegations in paragraph 78.

79. Paragraph 79 contains a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 79.

80. Mainstream denies the allegations in paragraph 80.

81. Mainstream denies the allegations in paragraph 81.

82. Mainstream denies the allegations in paragraph 82.

## COUNT II
## VIOLATION OF THE MINNESOTA FRANCHISE ACT
*The Mitchell Parties v. Mainstream*

83. Mainstream reasserts and incorporates by reference its answers to the preceding paragraphs.

84. Mainstream denies the allegations in paragraph 84.

85. Mainstream denies the allegations in paragraph 85.

86. Paragraph 86 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 86.

87. Paragraph 87 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 87.

88. Mainstream denies the allegations in paragraph 88.

89. Mainstream denies the allegations in paragraph 89. As to footnote 10 of paragraph 89, Mainstream states that the provisions of the FTC Franchise Rule speak for themselves and denies any allegations inconsistent with those provisions. Mainstream also denies any allegation that the Minnesota Franchise Act applies to Mainstream's relationship with Counterclaim Plaintiffs and affirmatively states that the Minnesota Addenda do not apply to, and were not incorporated into, the Mitchell Parties' Franchise Agreements.

90. Paragraph 90 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 90.

91. Mainstream denies the allegations in paragraph 91.

92. Paragraph 92 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 92.

93. Paragraph 93 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 93.

94. Mainstream denies the allegations in paragraph 94.

95. Paragraph 95 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 95. Mainstream specifically denies that it lacked the requisite good cause under any theory of the law to terminate the Mitchell Parties' Franchise Agreements.

96. As to paragraph 96, Mainstream states that the provisions of Minn. Stat. §80C.14, Subd. 3 speak for themselves and denies any allegations inconsistent with those provisions.

97. Mainstream denies the allegations in paragraph 97.

98. As to paragraph 98, Mainstream states that the October 2, 2019 Notices of Default and Termination speak for themselves and denies any allegations inconsistent with the language of the Notices. Mainstream also denies any allegation that the Minnesota Franchise Act applies to Mainstream's relationship with Counterclaim Plaintiffs and affirmatively states that Mainstream properly terminated the Franchise Agreements. Mainstream denies the remaining allegations in paragraph 98.

99. Mainstream denies the allegations in paragraph 99.

### COUNT III
### DECLARATORY RELIEF
*Counterclaim Plaintiffs v. Counterclaim Defendant*

100. Mainstream reasserts and incorporates by reference its answers to the preceding paragraphs.

101. Paragraph 101 contains a statement of relief sought to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 101, including those in subdivisions (a) through (c).

102. Paragraph 102 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 102.

103. Paragraph 103 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 103.

104. Mainstream denies the allegations in paragraph 104.

105. Paragraph 105 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 105.

106. Paragraph 106 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 106.

107. Paragraph 107 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 107.

108. Paragraph 108 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 108.

109. Paragraph 109 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 109.

110. Mainstream denies the allegations in paragraph 110. Footnote 11 of paragraph 110 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in footnote 11 of paragraph 110.

111. Paragraph 111 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 111.

112. Paragraph 112 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 112.

113. Paragraph 113 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 113.

114. Paragraph 114 states a legal conclusion to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 114.

115. Mainstream denies the allegations in paragraph 115.

116. Mainstream denies the allegations in paragraph 116, including those in subdivisions (a) through (k).

117. Mainstream denies the allegations in paragraph 117.

118. Mainstream denies the allegations in paragraph 118.

119. Paragraph 119 contains a legal argument to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 119.

120. As to paragraph 120, the November 1, 2019 letters speak for themselves and Mainstreams denies any allegations inconsistent with those letters. Mainstream denies the remaining allegations in paragraph 120.

121. Mainstream denies the allegations in paragraph 121.

122. Mainstream denies the allegations in paragraph 122.

123. Paragraph 123 contains a statement of relief sought to which no response is required. To the extent a response is required, Mainstream denies the allegations in paragraph 123, including those in subdivisions (a) through (h).

## **AFFIRMATIVE DEFENSES**

A. Counterclaim Plaintiffs have failed to state any claim upon which relief can be granted.

B. At all times relevant herein, Mainstream has conducted itself in a commercially reasonable manner in compliance with the Franchise Agreements and all applicable laws.

C. At all times relevant herein, Mainstream made a good faith effort to comply with the Franchise Agreements and all applicable laws.

D. Any loss sustained by Counterclaim Plaintiffs was due to their own acts or omissions or the result of acts or omissions of persons or entities over which Mainstream exercised no control.

E. Counterclaim Plaintiffs are unable to prove that Mainstream caused them any damages.

F. Counterclaim Plaintiffs fail to state a claim for a violation of the Minnesota Franchise Act ("MFA") because the jurisdictional requirements of the MFA have not been met or satisfied.

G. Counterclaim Plaintiffs' MFA claims are barred because the MFA is intended to protect Minnesota franchisees and does not extend protections to franchisees in other states.

H. Counterclaim Plaintiffs' MFA claims are barred because they explicitly waived the application of the MFA under the clear terms of the Franchise Agreements.

I. Counterclaim Plaintiffs' claims are barred, in whole or in part, by their own breaches of the Franchise Agreements between the parties.

J. Counterclaim Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and unclean hands.

K.     Mainstream expressly reserves the right to assert additional defenses if, and to the extent that, such affirmative defenses become applicable.

WHEREFORE, Mainstream prays that the Court dismiss the Counterclaim with prejudice, enter an award in Mainstream's favor and against Counterclaim Plaintiffs, award Mainstream its costs and attorneys' fees pursuant to Articles 20.1 and 20.11 of the Franchise Agreements and Guarantees, and award Mainstream such other relief as the Court deems just and proper.

DATED: May 14, 2020

**LATHROP GPM, LLP**

By:   /s/Craig P. Miller
    Craig P. Miller (#26961X)
500 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone:  (612) 632-3258
craig.miller@lathropgpm.com

Maisa Jean Frank (DC Bar No. 1001354)
600 New Hampshire Ave N.W.
The Watergate – Suite 700
Washington, DC 20037
Telephone: (202) 295-2209
maisa.frank@lathropgpm.com

**ATTORNEYS FOR PLAINTIFF**

GP:4850-5667-1675 v5